**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE

| | |
|---|---|
| **FREDWRICK YOUNG AND DEBORAH KAYE YOUNG,** | **CASE NO. 09-52200-NPO** |
| **DEBTORS.** | **CHAPTER 13** |
| **FREDWRICK YOUNG** | **PLAINTIFF** |
| V. | **ADV. PROC. NO. 11-05021-NPO** |
| **TWIN STATES FINANCE, INC. AND OTIS GOUGH** | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**
**RESOLVING ISSUES OF LIABILITY IN THE COMPLAINT**

There came on for consideration the Complaint Seeking to Hold Defendants in Contempt (the "Contempt Complaint") (Adv. Dkt. 1)[1] filed by Fredwrick Young (the "Debtor") and the Answer of Twin States Finance, Inc. and Otis Gough (Adv. Dkt. 4) filed by Twin States Finance, Inc. ("Twin States") and Otis Gough ("Gough") in the above-referenced adversary proceeding (the "Adversary"). In the Adversary, Tylvester O. Goss represents the Debtor, and Arthur F. Jernigan, Jr. represents Twin States and Gough.

The Pretrial Order (Adv. Dkt. 17) was entered on January 26, 2012. At the pretrial conference held on February 2, 2012, the parties agreed to cancel the trial (set for February 8-9, 2012) and submit the liability issue on briefs, stipulations, and documentary evidence. The parties further agreed that a trial on the issue of damages, if appropriate, would be set at a later date. On

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary proceeding, Adv. Proc. No. 11-05021-NPO, are cited as "(Adv. Dkt. ___)" and (2) citations to docket entries in the main bankruptcy case, Case No. 09-52200-NPO, are cited as "(Dkt. ___)".

February 23, 2012, the Memorandum Brief (the "Debtor Brief") (Adv. Dkt. 25) was filed by the Debtor, and the Memorandum Brief Submitted by Twin States Finance, Inc. and Otis Gough (the "Twin States Brief") (Adv. Dkt. 26) was filed by Twin States and Gough on the same date. At issue in the Adversary is whether the actions of Twin States and its agent, Gough, after the Debtor filed his Petition,[2] violated the automatic stay under 11 U.S.C. § 362(a), and whether their actions were "willful" within the meaning of 11 U.S.C. § 362(k) so as to entitle the Debtor to damages. The Court, having considered the Debtor Brief, the Twin States Brief, the documentary evidence, and the Pretrial Order, finds that Twin States and Gough willfully violated the automatic stay and are also liable to the Debtor for civil contempt of court for the reasons set forth below.[3]

## Jurisdiction

This Court has jurisdiction over the parties and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Notice of the Contempt Complaint was proper under the circumstances.

## Facts

The following facts are derived from the Debtor Brief, the Twin States Brief, stipulations in the Pretrial Order, and other pleadings filed in the Adversary and in the main bankruptcy case:

1. On August 28, 2009, Twin States filed a Complaint for "Judgment, Claim and Delivery" against the Debtor in the County Court of Lauderdale County, Mississippi (the "County Court") in Cause No. CA-09-1095(C), seeking the return of a lawn mower, bush hog, and other

---

[2] For the definition of "Petition" *see infra* pp. 3.

[3] Pursuant to Federal Rule of Civil Procedure 52, as made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

personal property that the Debtor had purchased through a loan from Twin States. (Pretrial Order 5-6). Apparently, the Debtor never made any loan payments.

**Commencement of the Debtor's Bankruptcy Case**

2. On October 2, 2009, the Debtor commenced this bankruptcy case by filing a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code[4] (the "Petition"). (Dkt. 1).

3. In his bankruptcy schedules, the Debtor listed Twin States as a creditor holding a claim in the amount of $3,500.00 that was secured by a lawn mower. (Dkt. 3). The Debtor's proposed Chapter 13 Plan (Dkt. 6) listed the amount owed to Twin States as $3,500.00 and provided for monthly payments to Twin States totaling $2,500.00, the estimated value of its collateral.

4. On October 23, 2009, the Debtor filed an Objection to Secured Claim(s) and Other Relief (the "Objection") (Dkt. 21), asking the Court to set the value of Twin States' secured claim for the purpose of plan confirmation at $2,500.00. The basis for this amount was the then-current value of Twin States' collateral, described in the Objection as a "lawnmower." (Dkt. 21).

5. On December 2, 2009, the Court entered an Order (the "Abandonment Order") (Dkt. 38), signed by the chapter 13 trustee, the Debtor, and Twin States, reflecting an agreement reached between the parties as to the Debtor's Objection. Twin States agreed to withdraw the Objection, and the Debtor agreed to abandon "non-exempt collateral" identified in Exhibit "A" attached to the Abandonment Order as the following personal property:

> 2007 Bush Ho[g]-Zero Turn Lawn Tractor
> Sony Stereo System
> Sanyo Color TV

---

[4] The United States Bankruptcy Code, found at Title 11 of the United States Code, hereinafter will be referred to as the "Code," and all code sections hereinafter will refer to the Code unless otherwise noted.

>Sportcraft Exercise Equipment
>Auto Tools
>5x8 Utility Trailer

(together, the "Abandoned Property") (Dkt. 38). The Abandonment Order by its express terms does not "terminate, annul, or modify" the automatic stay imposed by § 362. Twin States and Gough nevertheless contend that it was the intent of the parties, "given the circumstances of the settlement . . . that there [be] no legal constraint to any subsequent claims or proceedings for the return of the property." (Twin States Brief 3-4).

**Post-Petition Acts by Twin States and Gough Outside of Bankruptcy Court**

6.  After the Debtor failed to reveal the location of the Abandoned Property, Twin States on May 18, 2010, amended its complaint in County Court asking for "Claim and Delivery (Replevin)" of the Abandoned Property (the "Replevin Complaint"). (Pretrial Order 6).

7.  When the Debtor did not answer or otherwise respond to the Replevin Complaint, Twin States applied for entry of a default judgment against him. On July 26, 2010, the County Court entered a default judgment (the "Judgment") against the Debtor on the Replevin Complaint. (Pretrial Order 6). On October 10, 2010, the Judgment was amended *nunc pro tunc* to restrict Twin States' rights to the Abandoned Property and to remove the monetary award against the Debtor. On that same date, Twin States enrolled the Judgment, as amended.

8.  On December 15, 2010, the County Court issued a "Writ of Execution to the State of Mississippi, Lauderdale County, Mississippi" (the "Writ of Execution"), commanding the Sheriff of Lauderdale County, Mississippi, or any other such lawful officer, to take possession of certain personal property of the Debtor to satisfy the Judgment. That property included the following:

>1 Emerson VCR, . . .1 Dell Home Computer System, 1 Sony Stereo System, 1 Sanyo

> Color TV . . . ,1 Digital Color TV . . . , 1 Weedeater . . ., 1 Yazoo Mower . . . , 1 Piece Sportcraft Exercise Equipment . . . , Misc Auto Tools, 1 2007 Bush Hog . . . and 1 Utility Trailer.

(together, the "Subject Collateral"). (Debtor's Compl. Ex. A). Notably, the Subject Collateral consisted not only of the Abandoned Property but also of other personal property of the Debtor. With the Writ of Execution in hand, a deputy sheriff interviewed the Debtor, who told him that except for a few items, the Subject Collateral was not in his possession.

9. Dissatisfied, Gough sought the assistance of the Meridian Police Department (the "Police") on January 5, 2011, to recover the Subject Collateral. (Debtor's Compl. Ex. B). In his statement to the Police, Gough admitted he had received notice of the Debtor's bankruptcy, but complained that an "order was signed by the bankruptcy judge abandoning said property to my business Twin States Finance." (Debtor's Compl. Ex. B). Gough further told the Police that the Debtor had been evasive about the whereabouts of the Abandoned Property and possibly had disposed of some items. Of particular relevance to the Adversary is the following inquiry between the Police and Gough:

> Q: What do you want to happen to Mr. Young [the Debtor]?
> A: I don't want anything to happen to him, I just want my money.
> Q: What if he is unable to provide you with the money?
> A: I am willing to prosecute to the fullest extent of the law.

(Debtor's Compl. Ex. B). Twin States and Gough maintain that the above discussion demonstrates that Gough did not seek criminal action against the Debtor because Gough told the Police that he did not want anything to happen to him. (Twin States Brief 8). The Debtor, in contrast, urges the opposite view because Gough told the Police that he was willing to prosecute him to the fullest extent of the law. (Debtor Brief 2).

10. On January 7, 2011, the Police interviewed the Debtor who stated that he could return most of the items with the exception of the Yazoo Mower because it had been damaged by a fallen tree. On January 24, 2011, a "Warrant In State Cases" (the "Arrest Warrant") was issued charging the Debtor with the crime of grand larceny as set forth in Miss. Code Ann. § 97-17-41.[5] (Debtor's Compl. Ex. C). The Debtor was arrested on January 31, 2011, and bond was set at $30,000.00. At the preliminary hearing, all charges against the Debtor were dismissed for lack of probable cause.

11. On February 11, 2011, the Debtor filed in County Court a Rule 60(b) Motion for Relief from Judgment stating that Twin States' and Gough's attempts to enforce the Judgment against him violated the automatic stay. (Debtor's Compl. Ex. D). On March 1, 2011, the County Court entered a Judgment Denying Relief from Judgment on the ground that "it had full authority to allow the collateral to be picked up by [Twin States] as a result of the abandonment order of the Federal Bankruptcy Judge." (Debtor's Compl. Ex. 2D).[6]

12. Undeterred by the dismissal of the grand larceny charges, Gough convinced the Police

---

[5] Section 97-17-41(1) states:

> Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more, shall be guilty of grand larceny and shall be imprisoned in the Penitentiary for a term not exceeding ten (10) years; or shall be fined not more than Ten Thousand Dollars ($10,000.00), or both. The total value of property taken and carried away by the person from a single victim shall be aggregated in determining the gravity of the offense.

Miss. Code Ann. § 97-17-41(1).

[6] There are six exhibits attached to the Contempt Complaint. The first four exhibits are labeled "A-D" and the fifth is labeled "E," rather than "F." The Judgment Denying Relief from Judgment entered by the County Court on March 1, 2011, is not marked as an exhibit, however; it appears between "Exhibit D" and "Exhibit E." Thus, for the sake of clarity, the Court will refer to this unmarked exhibit as "Debtor's Compl. Ex. 2D."

to present his case against the Debtor for prosecution to the District Attorney of Lauderdale County, Mississippi (the "District Attorney").  On March 24, 2011, the grand jury returned an "Indictment Larceny; Tenants in Common MCA § 97-17-63" ("Indictment") in the Circuit Court of Lauderdale County, Mississippi (the "Circuit Court"), charging the Debtor with theft.[7]  (Debtor's Compl. Ex. E).  The Indictment alleged that on December 2, 2009, the Debtor did "wilfully, unlawfully, and feloniously sell, give away, conceal, or . . . convert or dispose of one Yazoo Mower . . . and one Utility Trailer . . . with a total value of Six Thousand Dollars ($6,000.00) with the intent to defraud Otis Gough, a person with an interest in the property."  The Indictment was later dismissed by the District Attorney.  (Pretrial Order 6).

**Adversary**

13.     On May 16, 2011, the Debtor commenced this Adversary by filing the Contempt Complaint.  In the Contempt Complaint, the Debtor seeks to recover compensatory and punitive damages for violations of the automatic stay pursuant to § 362(k), to hold Twin States and Gough in contempt of court under § 105(a), and to enjoin the criminal proceedings against him in Circuit Court.

---

[7] Section 97-17-63, which pertains to the theft of personal property by a joint owner or tenant in common, states:

> Any tenant in common of personal property, or person who is in any manner interested in any such property in which any other person has an interest, who shall sell, give away, conceal, or in any way convert or dispose of such property, with intent to defraud his cotenant or other person interested in such property shall be punished as if he had committed larceny of such property of the value of the interest of his cotenant or other person interested in such property.

Miss. Code Ann. § 97-17-63.

**Discussion**

**A.    Scope of the Automatic Stay**

"[11 U.S.C.] § 362. . . provides that the filing of a bankruptcy petition operates as a stay of the 'commencement or continuation' of all non-bankruptcy judicial proceedings against the debtor. The stay is automatic and 'springs into being immediately upon the filing of a bankruptcy petition'" in a voluntary bankruptcy case. Chapman v. Bituminous Ins. Co. (In re Coho Res., Inc.), 345 F.3d 338, 343-44 (5th Cir. 2003) (citations omitted); *see also* § 11 U.S.C. 303.  The stay under § 362(a) bars any civil action or proceeding commenced against the debtor after the filing of the petition, aside from certain limited exceptions set forth in § 362(b).[8]  *See* Broadstar Wind Sys. Group, LLC v. Stephens, No. 11-11025, 2012 WL 171619, * 4 (5th Cir. Jan. 23, 2012) (citation omitted).  The protection afforded to a debtor by the automatic stay are broad, and, as a result, in any case where there is uncertainty, the stay applies.  Brown v. Chesnut (In re Chesnut), 422 F.3d 298, 303 (5th Cir. 2005).

In addition to enjoining the commencement of any legal proceeding, the stay prohibits the continuation of any pending civil litigation, subject to the limited exceptions previously mentioned. 3 COLLIER ON BANKRUPTCY ¶ 362.03[3] (16th ed. 2011).  For this reason, a judgment entered by a non-bankruptcy court after the filing of the petition is considered voidable.  3 COLLIER ON BANKRUPTCY ¶ 362.03[3] (16th ed. 2011); *see also* In re Coho Res., Inc., 346 F.3d at 344 (holding

---

[8] The exceptions under § 362(b)(2)(A) to the automatic stay include "the commencement or continuation of a civil action . . . for the establishment of paternity; for the establishment or modification of an order for domestic support obligations; concerning child custody or visitation; for the dissolution of marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or regarding domestic violence." 11 U.S.C. § 362(b)(2)(A).

judgments rendered post-bankruptcy in violation of the automatic stay are voidable and subject to discretionary "cure").

Here, the Debtor filed the Petition on October 2, 2009. The filing of the Petition resulted in the imposition of an automatic stay of all legal proceedings pending against the Debtor or against property in which the Debtor has an interest. Thus, any actions taken in continuation of such proceedings after the filing of the Petition, excluding those actions that fell within the limited exceptions provided for in § 362(b) or (c),[9] violated the automatic stay. The actions that the Debtor challenges as violations of the stay may be divided between legal proceedings in County Court and Circuit Court and are discussed below in that order.

1. **County Court**

As stated previously, on May 18, 2010, Twin States filed the Replevin Complaint in County Court after the Debtor had filed his Petition and, therefore, after the automatic stay was in effect. This filing was a continuation of a collection suit filed by Twin States against the Debtor. When the Debtor failed to answer or otherwise respond to the Replevin Complaint, Twin States obtained a Judgment against him on July 21, 2010. Frustrated with its ability to locate the Abandoned Property, Twin States intensified its collection efforts, culminating in the Arrest Warrant.

Twin States insists that none of these actions violated the automatic stay because none involved property of the Debtor's bankruptcy estate.[10] According to Twin States, the Abandonment Order entered on December 2, 2009, removed the Abandoned Property from the Debtor's bankruptcy

---

[9] § 362(c)(1) provides that "the stay of an act against property of the estate . . . continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1); *see also* pp. 10.

[10] *See supra* note 8.

estate and, as a result, the automatic stay no longer protected the Debtor or the Abandoned Property. Although the Abandonment Order does not address the automatic stay and "may have been inadvertently omitted" from the Abandonment Order, Twin States maintains that it was the intent of the parties that Twin States be allowed to take any and all actions necessary to recover its collateral. (Twin States Brief 3). Otherwise, the Abandonment Order served no purpose, so says Twin States. (Twin States Brief 4).

Twin States' argument misstates the interrelationship between abandonment of property under § 554 and stay relief under § 362. Just because abandoned property is no longer property of the bankruptcy estate, does not mean that the automatic stay has been "terminate[d], annul[led], or modif[ied]" *See* 11 U.S.C. § 362(c)(1). "[T]he abandonment of [property] by the trustee removes such [property] from the bankruptcy estate, but upon removal from the bankruptcy estate it continues as property of the debtor plaintiff, and the stay continues in effect until the occurrence of [one of the] events mentioned in . . .[§] 362(c)(2)." Gassaway v. Fed. Land Bank of New Orleans (In re Gassaway), 28 B.R. 842, 846 (Bankr. N.D. Miss. 1983). Before a creditor has a right to a debtor's property, relief from the automatic stay must be granted, either by court order or by operation of law. In re Lair, 235 B.R. 1, 21-22 (Bankr. M.D. La. 1999).

Even though Gassaway and Lair are both chapter 7 cases, an often-cited treatise on bankruptcy law has recognized that this principle holds equally true in chapter 13 cases. Actions prohibited by § 362(a), even those against property that is not property of the bankruptcy estate, are stayed in a chapter 13 case until the earliest of the case closing, the case dismissing, or the debtor receiving his discharge. Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 74.1 at ¶ 6, Sec. Rev. Apr. 30, 2004, www.Ch13online.com. This is consistent with the

view espoused by many courts that the abandonment of property is not analogous to relief from the stay. *See, e.g.*, In re Remington Forest, No. 97-76069, 1996 WL 33340744, *6, No. 95-76069 (Bankr. D. S.C. June 18, 1996) (citing Nebel v. Richardson (In re Nebel), 175 B.R. 306, 311 (Bankr. N.D. Neb. 1994)) (finding that § 554 would be rendered superfluous if abandonment of property were equivalent to an order annulling the stay).

Finding abandoned property to be protected by the automatic stay is also consistent with the Uniform Local Rules of the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi (the "Local Rules"). Local Rule 6007-1(b) states that "[a]n abandonment of property, by itself, does not affect the automatic stay. Therefore, when a motion which includes a request to have the trustee abandon the property from the estate pursuant to section 554(b) is filed, the moving party ordinarily should also seek relief from the automatic stay pursuant to section 362(d)." MISS. BANKR. L.R. 6007-1(b). In both the Debtor Brief and the Twin States Brief, however, the parties cite to Local Rule S7-1(b), which was superseded by Local Rule 6007-1(b). (Debtor Brief 3; Twin States Brief 6). The Debtor contends that Twin States failed to comply with Local Rule S7-1(b) because "[a]bandonment does not correspondingly provide relief from or modification of the automatic stay provisions of 11 U.S.C. § 362(a)." Twin States counters that Local Rule S7-1(b) refers to the procedure for abandonment in chapter 7 cases only and is thus inapplicable to the Debtor's chapter 13 case.

The Court finds that Local Rule 6007-1(b), the current local rule, does not limit itself to chapter 7 cases. In that regard, Local Rule 6007-1(b) is wholly consistent with Rule 6007 of the Federal Rules of Bankruptcy Procedure, which applies in chapter 7, 11 and 13 cases. FED. R. BANKR. P. 6007 (Advisory Committee Note 1983) ("This section is applicable in chapter 7, 11 and

13 cases.").

Simply stated, although the Abandoned Property was no longer property of the estate as a result of the Abandonment Order, the Abandoned Property was still protected by the automatic stay. If Twin States wished to recover the Abandoned Property, its remedy was to follow the procedures outlined in § 362(d) by filing a motion requesting relief from the stay to continue the prosecution of its replevin action in County Court, as set forth in Local Rule 6007-1(b). In the alternative, Twin States' remedy was to wait until the stay was no longer in effect after the occurrence of one of the events listed in § 362(c).

Underlying the above discussion is the assumption that Gough restricted his collection efforts on behalf of Twin States solely to the Abandoned Property. He did not. Gough's actions also reached estate property, and even the Debtor himself. On December 15, 2010, Twin States filed a Writ of Execution against the Debtor. The Subject Collateral listed in the Writ of Execution included not only the Abandoned Property, but also property of the estate. As previously stated, property that is no longer property of the bankruptcy estate is still protected by the automatic stay. However, even assuming for the sake of argument that Twin States is correct that the Abandoned Property was not protected by the automatic stay, the Writ of Execution nevertheless violated the stay because it included estate property property that was not covered by the Abandonment Order. Gough's actions clearly exceeded the scope of the Abandonment Order.

### 2. Circuit Court

The legal proceedings in the Circuit Court began when Gough, acting as an agent for Twin States, filed an affidavit with the Police in another attempt to recover the Subject Collateral from the Debtor. Gough's act of filing the affidavit violated the stay as it was yet another action directed

against the Debtor personally, as well as against both property of the estate and the Abandoned Property.  As a direct result of the affidavit, an Arrest Warrant was issued, and the Debtor was arrested and charged with grand larceny.  Additionally, the Debtor was indicted by a grand jury for theft on March 24, 2011.

It is absurd for Twin States to justify the Arrest Warrant and Indictment based on the provisions of the Abandonment Order, which mentions nothing about the Debtor's loss of liberty. Moreover, the Court rejects the defense raised in Twin States Brief that the criminal proceedings against the Debtor were exempted from the automatic stay under § 362(b)(1), which allows for the "commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1).  The above criminal actions were instigated by Gough for the purpose of coercing payment of the Judgment. *See* Boydston v. Reed, 218 B.R. 840, 841-42 (N.D. Miss. 1998) (replevin action against chapter 13 debtor was not excepted from automatic stay under § 362(b)(1) notwithstanding debtor's arrest for embezzling same property).

Each of the aforementioned actions taken by Twin States and Gough outside of the bankruptcy Court in County Court and Circuit Court — amending the Replevin Complaint, seeking the Judgment, obtaining the Writ of Execution, filing the affidavit that led to the Arrest Warrant, and pursuing the Indictment — violated the automatic stay for the reasons previously set forth.

B. **Violations of the Automatic Stay**

    1. **Section 362(k)**

The Code, in § 362(k), creates a private right of action for a debtor against any entity who "willfully" violates the automatic stay. Young v. Repine (In re Repine), 536 F.3d 512, 519 (5th Cir. 2008).  Specific intent to violate the stay is not required to show that a creditor's violation was

"willful." Campbell v. Countrywide Home Loans, Inc. (In re Campbell), 361 B.R. 831, 851 (Bankr. S.D. Tex. 2007). Instead, a debtor who seeks to recover damages under § 362(k) must prove three elements: (1) that the entity knew of the existence of the stay, (2) that the entity's acts were intentional, and (3) that the entity's acts violated the automatic stay. Young, 536 F.3d 512 at 519.

If a debtor can successfully prove all three elements of a willful violation of the automatic stay, he is entitled to recover actual damages, including costs, attorney's fees, and in "appropriate circumstances" punitive damages. *See* 11 U.S.C. § 362(k). "'The plain meaning of [§ 362(k)] requires that the injured party be awarded the entire amount of actual damages reasonably incurred as a result of a violation of the automatic stay.'" Campbell, 361 B.R. at 852 (citation omitted). Further, when a court finds that a creditor has willfully violated the stay, reasonable attorney's fees must be awarded as a component of the Debtor's actual damages. Id. However, punitive damages, unlike compensatory damages, are not mandated by statute but depend upon the facts of each case. Id.

The Court finds that the actions taken by Twin States and Gough against the Debtor constituted willful violations of the stay, which entitle the Debtor to recover damages. As to the first element, there is undisputed evidence that Twin States and Gough knew that the Debtor filed the Petition prior to the relevant events. First, Twin States was served with a copy of the Objection. (*See* Dkt. 22). Second, the Abandonment Order was the result of an agreement entered into by Twin States. Finally, Gough himself admitted to the Police in his affidavit that the Debtor had filed the Petition.

As to the second element of a "willful" violation, the Court finds that the actions taken in violation of the stay were intentional. With respect to this inquiry, whether Gough actually or

reasonably believed that the Abandonment Order authorized him to take these actions is irrelevant. The actions of Gough that amounted to violations of the automatic stay were intentional. As to the third element, the Court has previously found that Twin States and Gough violated the automatic stay under § 362(a). In sum, the Court finds that the Debtor has successfully demonstrated that Twin States and Gough willfully violated the automatic stay, and as a result, that a trial on the issues of damages will be scheduled for a later date.

### 2. Contempt of Court

As the automatic stay is essentially a court-ordered injunction, any creditor who violates the stay may be held in contempt of court. Carver v. Carver, 954 F.2d 1573, 1579 (11th Cir. 1992). An action for contempt of court may be either criminal or civil in nature. Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.), 108 F.3d 609, 612 (5th Cir. 1997) (citation omitted). If the intent behind the contempt order is to punish, then the order is for criminal contempt. Id. If, however, the intent of the contempt order is to "coerce compliance with a court order or *to compensate another party for the contemnor's violation*" the order is civil. Id. Bankruptcy courts have the power to hold entities in civil contempt under § 105(a), but not in criminal contempt. In re Sanchez, 372 B.R. 289, 309 (Bankr. S.D. Tex. 2007) (emphasis added).

A bankruptcy court may hold in civil contempt any entity who willfully violates the automatic stay. In re Meinke, Peterson, & Damer, P.C., 44 B.R. 105, 108 (Bankr. N.D. Tex. 1984). For a creditor's violation of the stay to be willful, however, the creditor must act with knowledge of the stay. Id. If a creditor is found to be in contempt of the automatic stay, the bankruptcy court may award sanctions to the debtor. In re Sanchez, 372 B.R. at 310.

The Court finds that each of Twin States' and Gough's actions taken after the filing of the

Petition violated the automatic stay. The escalation of their collection efforts is reflected in the nature of the relief they pursued against the Debtor, beginning with the amendment of the Replevin Complaint, the entry of the Judgment, and the issuance of the Writ of Execution, which included both the Abandoned Property and estate property, and ending with the filing of the affidavit with the Police and the arrest and Indictment of the Debtor. Each of these actions violated the automatic stay. As previously mentioned, Gough and Twin States were well aware of the filing of the Debtor's Petition prior to taking the aforementioned actions against the Debtor. Thus, Twin States and Gough are liable for contempt of court as a result of their violations of the automatic stay, and the Debtor is entitled to an award of appropriate sanctions to be determined at a later date.

    **3.    Injunctive Relief**

Finally, in the Contempt Complaint the Debtor also requests that this Court enjoin the pending state court criminal proceedings against the Debtor. However, the Anti-Injunction Act, 28 U.S.C. § 2283, forbids federal courts from enjoining pending state court litigation unless an injunction is expressly authorized by Congress, the injunction is necessary in aid of its jurisdiction, or an injunction is necessary to protect or effectuate its judgment. 28 U.S.C. § 2283. Also, the United States Supreme Court has held that the "basic doctrine of equity jurisprudence" prohibits federal courts from enjoining pending state court criminal proceedings except under "special circumstances." Younger v. Harris, 401 U.S. 37 (1971). "[A] bankruptcy court may enjoin a state criminal proceeding only if the requisites of both Younger . . . , and the Anti-Injunction Act . . . are met." Fussell v. Price, 928 F.2d 712, 713 (5th Cir. 1991). Because it appears that the Debtor's request for injunctive relief has been rendered moot by the District Attorney's dismissal of the Indictment and because of the important public policy issues raised by the issuance of an injunction

against state criminal proceedings, the Court declines to enjoin the Circuit court based on the facts presented.

## Conclusion

Based on the foregoing, the Court concludes that the Debtor has successfully demonstrated that Twin States and Gough willfully violated the automatic stay and are liable for civil contempt of court. Accordingly, the Court finds that the Debtor's request for damages and/or sanctions is well-taken and should be granted. A separate order will not be entered until after the trial on the issue of damages and/or sanctions.

SO ORDERED.

/s/ Neil P. Olack
Neil P. Olack
United States Bankruptcy Judge
Dated: April 9, 2012